UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
Vipin Sehgal, on behalf of
himself and all other persons
similarly situated,

        Plaintiff,

    -against-

Karena Foods Inc. d/b/a
Mughlai Indian Cuisine, Eda
Foods Inc. d/b/a Mughlai
Indian Cuisine, Girshi Doe,
and Mahendra Doe,

        Defendants.
-----------------------------------------------------x

Case No. 23-cv-08799

AFFIDAVIT

STATE OF NEW YORK  )
                            )ss.:
COUNTY OF NEW YORK  )

    Mahender Tulsiani, being duly sworn, deposes and says:

    1.    I am the manager of Karena Foods, Inc., a defendant in this case. My brother owns Karena Foods, Inc. and Eda Foods, Inc., the other defendant in this case, in which I also have a management role. I am familiar with the Plaintiff, Vipin Sehgal, who worked for our restaurants. The Defendant restaurants are Indian style casual restaurants, featuring limited indoor dining, and largely a take-out format. Sehgal was a delivery person for a short time for us. We had to terminate his employment because he would show up drunk, show up late or not at all, and was an unreliable employee. I make this affidavit in support of our motion for partial

summary judgment.

2.  Sehgal began his employment the last week of October 2022. His last day of employment was June 4, 2023. An explanation is required to understand how the business worked. Our restaurants have a lunch shift and a dinner shift. The lunch shift is 11:00 A.M. to 3 P.M. The dinner shift is 5 P.M. to 9 P.M. There is no work for delivery people in between the shifts. Sehgal would work at whatever restaurant needed his services that day. Thus, on some days he would both shifts at the same restaurant, and some days he would work lunch at one restaurant and dinner at another. However, there was never more than eight hours of work per day. Hours were kept by me based on shifts. Annexed hereto at Exhibit A is a chart of the shifts he worked during the times of his employment. "L" means a lunch shift and "D" means a dinner shift.

3.  Sehgal's rate of pay varied. And, there was an "on the books" component and an "off the books" component. We did this at his request. He told me he was having a major child support issue with his ex-girlfriend, and he needed to show less income on his official records. Thus, we paid him a flat rate of $450.00 on the books, with the balance paid off the books. The balance would vary based on tips and shifts worked that week. This arrangement lasted from his hiring until April 16, 2023. For the last month and a half, he was paid on the books in two components – one at $500, and one at $450 per week. A complete record of all checks and cash paid to Sehgal is annexed hereto, and is I believe undisputed. The payor of the check would not necessarily correspond to the company account of the restaurant where he worked, but more corresponded to the company that had the money to make payroll at any given week. A copy of all payments to Sehgal is annexed hereto at Exhibit B. An easy way to know what was on the

-2-

books versus off the books is that checks with a five digit check number were "on the books". Other checks were off the books. The cash payments were made on stubs which he would sign.

4. As shown by the document production of Sehgal, his checks came with a proper pay stub, showing the rate of pay and deductions taken. A copy of the documents received from Plaintiff is annexed hereto at Exhibit C. We ran payroll with our accountant, who handled all paperwork. The "off the books" payments were simply paid at full value. Sehgal was also given W-2 statements at year end for the on the books component.

5. In Paragraph 27 of the Complaint, it is alleged that "Mr. Sehgal's first paycheck each week was in the gross amount of approximately $450, for four days of work, while the second paycheck was in the gross amount of approximately $225, for two days of work." I disagree that the payments were related to this specific time. The $450 number was set by Sehgal, who told me that was all he could take on the books to avoid paying more child support and he asked that the "rest" be paid off the books. I did it to help him. But, even if is pay for all but the last two months of employment was what he said, he got around $675 per week plus tips. On the rare occasion where he worked overtime, which meant an extra day, not extra time in a day, he was paid more. For the last seven pay periods, as stated above, he was paid on the books for $950 per week, derived from two checks. This reflected the overtime of time and a half for the extra days.

6. There is no proof he worked overtime in any single day, and in fact he did not. There was never over time on this job in a day. The work was by a lunch and dinner shift with specific hours. The alleged $675 per week, based on a 40 hour week, comes to $16.87 per hour, which exceeded the minimum wage in effect for the period worked. However, he was paid more

-3-

than this amount, as shown by <u>Exhibit B</u>. This more than covers the extra shifts over five per week that he sometimes worked. In fact, on <u>Exhibit B</u>, payments add up to $23,005 for the period worked, which greatly exceeds minimum wage for the relevant period.

7. Thus, there is no claim that Sehgal was not paid an adequate amount, and all claims relating to the rate and amount of pay should be dismissed.

WHEREFORE, the motion should be granted.

_____
Mahender Tulsiani

Sworn and subscribed before me this 19 day of September, 2024.

_____
Notary Public

MICHAEL D SIEGEL
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02SI6020081
Qualified in Kings County
My Commission Expires 2/22/27

-4-